

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | | |
|---|---|---|
| DIANA HONG, | ) | |
| Plaintiff, | ) | Case  No. CV 04-10085 AJW |
| v. | ) | MEMORANDUM OF DECISION |
| JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration, | ) | |
| Defendant. | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

### Administrative Proceedings

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2-3]. Plaintiff filed her application for benefits on June 20, 2002.  [JS 2; Administrative Record ("AR") 68].  Administrative Law Judge Helen E. Hesse (the "ALJ") denied plaintiff's application in a written hearing decision dated June 11, 2004. [AR 12-20]. She found that plaintiff's hypertension, stomach ulcer, low back pain, arthritis, depression, and memory problems were severe, but that plaintiff had no exertional limitations. The ALJ further

found that plaintiff had non-exertional mental limitations restricting her to simple, repetitive tasks and minimal interactions with co-workers and the public. [AR 20].  The ALJ concluded that plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform work available in significant numbers in the national economy. [JS 2; AR 20].  The Appeals Council denied plaintiff's request for review of that decision. [AR 3-6].

### Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954.  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954.  The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

### Discussion

**Dr. Hochberg**

Plaintiff contends that the ALJ erred in evaluating the opinion of treating psychiatrist Richard A. Hochberg, M.D.

Dr. Hochberg saw plaintiff about once a month during the roughly two-year period from June 2002 through April 2004. [AR 169-194]. His progress notes are included in the record. With the exception of isolated words or phrases, however, they are not legible.  According to copies of prescriptions he wrote for plaintiff, Dr. Hochberg routinely prescribed Librium for

anxiety, Zyprexa for psychosis and/or Zoloft for depression, and Sonata as a sleep aid. [AR183-195].

In a disability opinion letter dated April 5, 2004, Dr. Hochberg discussed plaintiff's subjective history, clinical presentation, and the results of a mental status examination. He said that plaintiff had a fifteen-year history of severe anxiety, insomnia, depression, auditory hallucination, withdrawal and paranoia, and that her mental illness was in progress during the Vietnam War, when she witnessed her father's death in a bomb explosion. Her mother subsequently was struck by a car and killed. Plaintiff's illness had increased since that time, according to Dr. Hochberg. [AR 169]. Plaintiff said that her brother suffered from schizophrenia, leading Dr. Hochberg to theorize that plaintiff had both a genetic and "environmental" predisposition to that disorder. [AR 169].

Under "Mental Status Examination," Dr. Hochberg wrote that plaintiff initially was "disheveled" and entered the examination room "shaking and clearly responding to internal stimuli." She was "bizarre" and withdrawn, and she displayed speech that was either "circumferential or tangential." Her mood was "severely depressed," and she was anhedonic. She "feels worthless and guilty that she survived while her parents did not." She suffered from marked auditory hallucinations, including "people screaming at her" and her parents "calling her from the grave." Her concentration was poor, so much so that she could not "even repeat three number[s] backwards or forwards." She was oriented as to person but not time or place. Her judgment was poor. She could not interpret proverbs. [AR 169].

Dr. Hochberg diagnosed schizophrenia disorder and assigned plaintiff a Global Assessment of Functioning score of 20-30.[1] He commented that "[d]espite trying diligently in

---

[1]     The GAF score reflects a clinician's subjective rating, on a scale of 0 to 100, of the more severe of two components: the severity of a patient's psychological symptoms, or the psychological, social, and occupational functioning of a patient. The GAF rating is in the lower of two decile ranges if <u>either</u> the symptom severity <u>or</u> the level of functioning falls within that range (even if the other component does not). A GAF score of 21 to 31 denotes

therapy the patient remains severely psychotic, depressed and disabled and will remain so for life...." [AR 169-170]. He added that plaintiff "is in dire need of aid and it is my firm medical opinion that if this is not forthcoming she will be a serious suicide risk." [AR 170]. He also signed a mental assessment form indicating that plaintiff is "markedly limited" in most work-related mental abilities. [AR 171-175].

A treating physician's opinion is not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Where, however, a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the  record, that opinion is entitled to controlling weight. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir.  2001); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2.   Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of diagnosis; (5) consistency with other evidence in the record; and (6) area of specialization. Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d at 1202.

Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for

---

[b]ehavior that is considerably influenced by delusions or hallucinations OR serious  impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders Multiaxial Assessment 32 (4th ed. 1994)(revised 2002); see also Morgan, 169 F.3d at 598 n.1; Sousa v. Chater, 945 F.Supp. 1312, 1319 n.7, 1320 n.8, 1322 n.9 (E.D. Cal. 1996), rev'd on other grounds, Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998); see also Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004).

rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ rejected Dr. Hochberg's disability opinion and functional assessment because it was inconsistent with other substantial medical evidence in the record and was not supported by his progress notes or by objective findings. [AR 16-17]. The ALJ based her assessment of plaintiff's mental functional capacity on the conflicting opinions of the Commissioner's consultative examiner, the non-examining state agency psychiatrist, and the clinical psychologist who testified as a medical expert during the hearing, Craig Rath, Ph.D. [See AR 14-18].

As the ALJ noted, Dr. Hochberg's examination findings, diagnoses, and very pessimistic functional assessment contrasted sharply with those of the examining and non-examining physicians. In April 2002, Dr. Paculdo, the Commissioner's examining psychiatrist, reported that plaintiff's chief complaints were "[d]epression, lack of memory, insomnia, and migraine." [AR 156]. Plaintiff told Dr. Paculdo that she was born and raised in Vietnam and had eight brothers, but Dr. Paculdo did not mention any reference by plaintiff to her parents, their deaths, her survivor's guilt, any prolonged history of mental symptoms, or a family history of schizophrenia. [See AR 156-157]. Dr. Paculdo reported that plaintiff attributed her depression to her "physical problems and condition." [AR 156]. Plaintiff told Dr. Paculdo that she had been self-employed in sales until 2001 but had stopped working because "I have a lot of pain." [AR 156].

To Dr. Paculdo, plaintiff denied hallucinations or delusions of any kind. [AR 156]. She admitted "passive suicidal ideation" but no plans. [AR 156-157]. Plaintiff exhibited good grooming and hygiene, and she was fully oriented to time, place, person, and situation. [AR 156]. She displayed no abnormal movements or psychomotor agitation. She responded to questions appropriately. Her intelligence appeared to be in the normal range. Memory was intact, concentration and attention span were good, and she was able to perform serial sevens.

Her insight and judgment were fair, and she was not asked to interpret proverbs due to cultural differences. Plaintiff reported daily anxiety and depression, disturbed sleep, fluctuating energy level, and feelings of hopelessness and worthlessness, but her reality contact was intact, and she displayed no thought disorder. [AR 157].

Dr. Paculdo diagnosed anxiety, not otherwise specified, with a GAF score of 70, denoting some mild symptoms, such as depressed mood or mild insomnia, or some difficulty in social, occupational, or school functioning. See note 1, supra. Plaintiff's prognosis was good. Dr. Paculdo noted that plaintiff communicated with family members, friends, and neighbors, and she opined that plaintiff could sustain focused attention, complete an everyday routine, follow and understand simple instructions, and adapt to stresses common to the work environment. [AR 157].

The non-examining state agency psychiatrist, Dr. Mallare, opined that plaintiff had a severe affective disorder producing mild functional limitations as of September 2002, but she opined that with adequate and regular care, plaintiff's impairment would cease being severe by June 2003. [AR 121-126].

Plaintiff was represented by counsel during the hearing and testified with the assistance of a Vietnamese language interpreter. [AR 206-248]. Plaintiff testified that she had resided in the Unites States since 1979, was a United States citizen, and lived in a three-bedroom home with her husband, who worked as a waiter in a restaurant, and two of her children, aged 11 and 13. [AR 209-210]. She had a valid driver's license but said she had "not been driving for the last three years since I got sick." [AR 210]. She was licensed as a manicurist. [AR 211]. Her testimony, vocational report, and earnings record indicate that she last worked selling beauty supplies in 2001. [AR 62-65, 92-97, 211-212]. She testified that she could not work because she had "lots of headaches," back pain, could not sleep at night, "feel buzzing noise in my ears," and "at night when I wake up in the middle of the night I saw lots of dead people." [AR 212].

The medical expert, Dr. Rath, asked plaintiff if she ever heard "voices of people that aren't there." [AR 216]. Plaintiff responded, "Yes. All the time. I hear voices – whatever voices in my ear on the right side. And I also have water in there too." [AR 216]. Asked to clarify if

she heard voices only on the right side, plaintiff replied, "I hear voices, noises many times in my ear – in my ears.  Sometimes one side, this side, some other time the other side, but in this side I have more....  Almost any time I'm in pain I could hear that noise." [AR 216].  When Dr. Rath asked her when she had last heard the voices, plaintiff answered, "Whenever I'm tired, then I would hear it more." [AR 216].  Pressed by the ALJ, she said the last time was two weeks earlier, and she described the voices as "kind of like a buzzing voices, I cannot clearly distinguish or I couldn't tell." [AR 216].  Plaintiff said she could make out words here and there and that more words were in Vietnamese, but mostly it was just "murmuring." [AR 217].

On examination by her attorney, plaintiff testified that "I think about my parents and once in a while I sort of get very sad." [AR 228].  Asked by her attorney whether she ever saw people who were not there or heard voices, she said she saw "[d]ead people, lots of dead people." [AR 229].  Asked if she saw her parents, she agreed that she did, but she could not remember if they talked to her. [AR 229].  When her lawyer asked her if she ever felt happy, plaintiff said no. She did not know how she felt about her future, and when asked if she thought she might get better and go back to work, she said "I don't think so." [AR 231]. She said she sometimes thought about suicide but had never attempted it, and that "I just feel like I hate life." [AR 232].

Dr. Rath testified that he had reviewed the medical records, but that he could not read Dr. Hochberg's progress notes. [AR 218-219].  The ALJ told plaintiff's counsel that he too had been unable to decipher Dr. Hochberg's notes, and "[i]f you want to have me consider [them], please ask the doctor to type up the notes ...." [AR 218-219].  Counsel responded that he knew that Dr. Hochberg would not provide typewritten notes and was unlikely to agree to testify. Counsel also contended that the illegibility of a physician's notes was not a valid reason for denying benefits, and that Dr. Hochberg "writes [a] letter so that he can explain exactly what he's been saying all this time." [AR 219-220].  The ALJ replied that "if I can't read what's in the notes, I can't consider what's in the notes.  If you want to take steps to clarify that, that is entirely up to you.... [W]hatever letter he gives is going to be given the same weight as another letter similarly received. " [AR 220].  Counsel confirmed that he would not be able to obtain

clarification of Dr. Hochberg's notes. [AR 220-221].

Characterizing the record as "wildly divergent," the medical expert, Dr. Rath, testified that the opinions of Dr. Hochberg and Dr. Paculdo cannot "be reconciled. One must choose. And one can choose to perhaps be overmedicated or something, but one cannot choose to be normal if one is chronically schizophrenic ...." [AR 222]. Dr. Rath noted that plaintiff had worked as a beauty supply sales person until December 2001 despite the fifteen-year history of severe psychotic symptoms described by Dr. Hochberg. He concluded that Dr. Hochberg's diagnosis and assessment "doesn't match either her life history or the consultative examination," and he concluded that the consultative examiner's evaluation was credible while Dr. Hochberg's was not. [AR 222].

On examination by plaintiff's counsel, Dr. Rath agreed that if Dr. Hochberg's assessment were taken at face value, plaintiff would met the listing criteria for schizophrenia, and that some of the medication Dr. Hochberg prescribed for plaintiff can be prescribed for schizophrenia. [AR 224-225]. Dr. Rath asserted, however, that Dr. Hochberg's description of plaintiff as shaking, appearing to hallucinate, and uttering random speech was "totally inconsistent with the rest of the record." [AR 226].

The ALJ permissibly rejected Dr. Hochberg's April 2004 opinion and relied on the examining and nonexamining physicians' opinions to find that plaintiff suffered from severe depression and memory problems which limited, but did not preclude, her ability to work. [AR 19-20]. As Dr. Rath pointed out, Dr. Hochberg's opinion as to the nature and functional severity of plaintiff's mental impairments differed markedly from those of the examining and non-examining physicians. See Edlund, 253 F.3d at 1157 & n.6 (explaining that consistency with other evidence in the record is a factor used in assessing treating source opinions). Dr. Hochberg portrayed plaintiff as suffering from prolonged and intense symptoms of psychosis and depression. He asserted that plaintiff was overtly bizarre and withdrawn, displayed markedly abnormal movements and speech patterns, was unable to sustain even minimal concentration, and was severely depressed. None of those signs or symptoms was documented by the examining and nonexamining psychiatrists or psychologists. In addition, progress notes

from plaintiff's primary care physician, Dr. Phan, spanning five office visits in 2004 make no reference to any psychiatric abnormalities. [AR 197-204]. The Commissioner's consultative internal examiner, Dr. Bader, noted that plaintiff complained of depression. [AR 127].  He opined that plaintiff should undergo a psychiatric consultation because she was partially disoriented, in that she did not know her street number and confused the date and year.  He also commented, however, that plaintiff spoke only marginal English and had no family member present. [AR 127].  Dr. Bader did not mention any psychotic features. [AR 127-131].

Furthermore, the observations and conclusions in Dr. Hochberg's April 2004 letter cannot be corroborated by referring to his largely indecipherable treatment notes.[2]  The ALJ forewarned plaintiff's counsel that if Dr. Hochberg were unwilling or unable to provide legible notes, his opinion letter would be given whatever weight it warranted in the absence of notes. Contrary to plaintiff's counsel's suggestion, Dr. Hochberg's prescriptions for anti-depressant or anti-psychotic medication do not fill the gap left by the absence of legible notes  documenting plaintiff's actual signs and symptoms during the course of treatment. Plaintiff's counsel made it clear that there was no point in trying to obtain clarification from Dr. Hochberg.  Therefore, the ALJ did not err in rejecting Dr. Hochberg's opinion based on its lack of support in the progress notes, as well as on its lack of consistency with the medical record as a whole and with plaintiff's testimony.  See Connett v. Barnhart, 340 F.3d 871, 874-875 (9th Cir. 2003) (holding that the ALJ did not err in rejecting the controverted opinion of a treating physician whose restrictive functional assessment was not supported by his treatment notes); Edlund, 253 F.3d at 1157 & n.6 (listing the factors used to evaluate treating source opinions).

Plaintiff's vague, inconsistent hearing testimony about hearing voices, "murmuring," or "buzzing" in one or both ears did not match the description provided by Dr. Hochberg of her auditory hallucinations.  Plaintiff also testified that she saw "dead people" when she awoke at night, but she denied having any hallucinations or delusions to Dr. Paculdo, and Dr. Hochberg

---

[2]   It also is significant that while Dr. Hochberg said that plaintiff required an interpreter, whether, or to what extent, she had an interpreter present during her visits to him is not apparent from his disability letter or the treatment notes.

did not mention visual hallucinations in his letter. The remainder of plaintiff's testimony describes symptoms of depression that are consistent with Dr. Paculdo's observations and with the ALJ's finding that plaintiff was depressed and had memory deficits but nevertheless could perform simple, repetitive tasks involving minimal contact with others.

In addition, in the section of Dr. Hochberg's disability letter marked "General Introduction and Observation," he said that plaintiff's mental illness began while she still lived in Vietnam, that she had experienced severe psychotic symptoms for over fifteen years (long before he started treating her), and that over the course of that time she had "becom[e] more and more bizarre." [AR 169]. During the May 2004 hearing, however, plaintiff testified that she had been unwell for three years, which is consistent with her alleged onset date of December 10, 2001, the approximate date she stopped working. [AR 56, 68, 92]. Prior to that date, her mental impairment obviously was not disabling, regardless of what Dr. Hochberg said. Further, plaintiff gave no indication in her testimony or in her statements to other doctors that she had a history of mental illness even remotely comparable to that described by Dr. Hochberg. Indeed, since plaintiff said she came to the United States in 1979, Dr. Hochberg was drawing inferences about her condition more than twenty years before he started seeing her. Accordingly, the ALJ was entitled to give little weight to his assessment concerning the origins and intensifying course of her illness.

Plaintiff argues that schizophrenic symptoms wax and wane, and that because her symptoms fluctuate, the consultative examiner's opinion is entitled to less weight than the opinion of Dr. Hochberg. The problem with that argument is that Dr. Hochberg's disability opinion makes no allowance for fluctuations in plaintiff's symptoms, thereby undermining the credibility of his opinion. He insists that her condition has only gotten progressively worse during the last two decades, that she has become "more and more bizarre," that she displays overt psychotic features, that she will remain "severely psychotic, depressed and disabled... for life" and will require treatment to "barely survive," and that unless aid is forthcoming, she "will be a serious suicide risk." [AR 170]. The ALJ reasonably inferred that if plaintiff had the history and overtly psychotic clinical presentation Dr. Hochberg described, then Drs. Bader,

10

Paculdo, and Phan, who saw plaintiff in 2002, 2003, and 2004, respectively, would have remarked on it.

For all of the foregoing reasons, the ALJ met her burden to articulate specific, legitimate reasons based on substantial evidence for rejecting Dr. Hochberg's opinion.

**Credibility**

Plaintiff contends that the ALJ did not properly support her rejection of the alleged severity of plaintiff's subjective complaints.

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated).   Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan, 242 F.3d at 1148; see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons").   The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885; see Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989)(same).  If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ permissibly found that plaintiff's subjective complaints were not credible to the degree alleged.  [See AR 17].  The ALJ noted that the objective medical evidence (aside from Dr. Hochberg's report, which she permissibly rejected) did not document medical conditions likely to cause the extreme functional limitations plaintiff alleged, such as spending a lot of the

day lying down. [See AR 232-232]. The absence of objective medical evidence corroborating alleged symptom severity is one factor the ALJ may consider.  See Light, 119 F.3d at 792 ("An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. But, because a claimant need not present clinical or diagnostic evidence to support the severity of his pain, a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."). Similarly, plaintiff did not exhibit physical findings, such as muscle atrophy, likely to accompany the degree of physical inactivity she alleged. See Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001)(holding that the absence of evidence of disuse muscle atrophy was one clear and convincing reason, among others, given by the ALJ for discrediting the claimant's "excess symptom" testimony). With regard to her alleged arthritis pain, headaches, ulcer, and other physical complaints, the treatment documented in the record was minimal. [See AR 198-204]. The ALJ noted that no MRI examinations had been ordered to assess plaintiff's condition, and there was no recommendation for surgery, no hospital confinement, no emergency room treatment, and no use of a TENS unit or other intensive form of pain management.  See Burch v. Barnhart, 400 F.3d 676, 681(9th Cir. 2005) (observing that where the claimant's pain was "not severe enough to motivate her to seek" consistent treatment, that "is powerful evidence regarding the extent to which she was in pain").  The ALJ remarked that during her October 8, 2002 consultative examination, plaintiff reported walking three times a day with her daughter, an activity that is not consistent with the chronic debilitating pain, fatigue, and inactivity she alleged.  Plaintiff also reported taking care of her own grooming and hygiene, performing light household chores without assistance, visiting the doctor and pharmacy when driven there by her husband, and receiving weekly visits from her adult children and grandchildren. Her ability to communicate and interact with family and friends was intact. [AR 17, 80-84, 235-238].

The ALJ permissibly concluded that while none of those factors alone was conclusive, the record as a whole did not support the disabling functional limitations that plaintiff alleged. Therefore, the ALJ did not err in rejecting the alleged severity of plaintiff's subjective complaints.

1

### Conclusion

2        For the reasons stated above, the Commissioner's decision is supported by substantial

3   evidence and reflects application of the proper legal standards.   Accordingly, defendant's

4   decision is **affirmed.**

5

6   **IT IS SO ORDERED**.

7

8   DATED: April 27, 2006

9

10                                                       /s/
                                    ANDREW J. WISTRICH

11                                       United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28